IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**MELONEY RICHMOND,**

       **Plaintiff,**

v.                                         Case No.: 5:21-cv-00302

**KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,**

       **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Frank W. Volk, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Brief in Support of Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 16, 17).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the

pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

### I.     Procedural History

In 2019, Meloney Frances Richmond ("Claimant") filed applications for DIB and SSI, alleging a disability onset date of September 15, 2017 due to "insulin dependent diabetes, hypertension, non-alcoholic cirrhosis, and elevated heart rate." (Tr. at 206-21, 242). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 11). Claimant then filed a request for an administrative hearing, which was held on June 30, 2020 before the Honorable Sarah Zimmerman, Administrative Law Judge (the "ALJ"). (Tr. at 34-86). The ALJ issued a partially favorable decision on September 28, 2020, finding that Claimant was not disabled from her alleged onset date on September 15, 2017 through March 4, 2019; was disabled from March 5, 2019 through March 4, 2020; and was not disabled on or after March 5, 2020. (Tr. at 8-33). The ALJ's decision became the final decision of the Commissioner on April 12, 2021 when the Appeals Council denied Claimant's request for review. (Tr. 1-5).

Claimant, who is proceeding *pro se*, timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 13, 14). Claimant filed a Brief in Support of Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 16, 17). The time period within which Claimant could file a reply to the Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 55 years old on her alleged onset date and 58 years old on the date of the ALJ's decision. (Tr. at 100). She communicates in English; earned a master's degree in school counseling, as well as an LPN certificate; and previously worked as an LPN and nonprofit administrator. (Tr. at 50, 241, 243).

## III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

3

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

If the claimant is found disabled at any point in the sequential evaluation process, the ALJ must determine whether the claimant's disability continued through the date of the decision. In order to find that the claimant's disability did not continue through the date of the decision, the ALJ must show that medical improvement occurred which

5

related to the claimant's ability to work, or that an exception applies. *Id*. §§ 404.1594(a), 416.994(a). In making that determination, the ALJ must follow an eight-step evaluation process for a DIB claim and a seven-step process for an SSI claim. The evaluation processes are essentially the same for DIB and SSI claims with the exception of the first step regarding substantial gainful activity, which applies only to DIB claims.

At step one of a DIB claim, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity, and, if so, whether the claimant completed any applicable trial work period. *Id*. § 404.1594(f). If the claimant is employed and has completed a trial work period, his or her disability ends. *Id*. Otherwise, the evaluation proceeds to the next step. The ALJ considers at step two of a DIB claim and step one of a SSI claim whether the claimant has an impairment, or combination of impairments, which meets or equals an impairment in the Listing. *Id*. §§ 404.1594(f), 416.994(b). If the Listing is not satisfied, the ALJ considers at step three of a DIB claim and step two of an SSI claim whether there has been medical improvement as shown by a decrease in the medical severity of the impairment(s). *Id*. If the ALJ finds that medical improvement occurred, the ALJ evaluates at step four of the DIB claim and step three of the SSI claim whether the medical improvement related to the Claimant's ability to work. *Id*. If the ALJ determines that there was no medical improvement, or the medical improvement was not related to the claimant's ability to work, the ALJ considers at step five of a DIB claim and step four of an SSI claim whether an exception to medical improvement applies. *Id*. At step six of a DIB claim and step five of a SSI claim, the ALJ evaluates whether the claimant's current combination of impairments are severe. *Id*. If the impairments are severe, the ALJ assesses at step seven of a DIB claim and step six of an SSI claim the claimant's RFC based upon the claimant's current impairments and also

6

determines if the claimant can perform his or her past relevant work. *Id.* Finally, at step eight of a DIB claim and step seven of a SSI claim, the ALJ determines whether the claimant can perform other work that exists in significant numbers in the national economy given the claimant's RFC, age, education, and past work experience. *Id.* If the ALJ determines that the claimant can perform other work that exists in significant numbers in the national economy, the ALJ concludes that the claimant's disability ended. Otherwise, the claimant's disability continues.

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through March 31, 2023. (Tr. at 15, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since September 15, 2017, the alleged disability onset date. (Tr. at 15, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: Non-alcoholic steatohepatitis (NASH)-related cirrhosis with esophageal varices, obesity, affective disorder, and anxiety disorder. (*Id.*, Finding No. 3). The ALJ also considered Claimant's type 2 diabetes, gastroesophageal reflux disease (GERD), hypertension, hyperlipidemia, asthma, sinus tachycardia, sinusitis, and bilateral cataracts, but found that these impairments were non-severe. (Tr. at 16). The ALJ further found that Claimant's headaches and arthritis were not medically determinable impairments. (*Id.*).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 17-19, Finding No. 4). The ALJ concluded that prior to March 5, 2019, the start of the closed period of disability, Claimant possessed:

> [T]he residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except the claimant was unable to work at a production-rate pace, such as on an assembly line; in addition to normal breaks, she may have been off task 5% of the workday.

(Tr. at 19-22, Finding No. 5).

At the fourth step, the ALJ determined that prior to March 5, 2019 Claimant could perform her past relevant work as a licensed practical nurse (LPN), intake coordinator, and administrative assistant. (Tr. at 22-23, Finding No. 6). However, the ALJ found that from March 5, 2019 through March 4, 2020, the closed period of disability, the severity of Claimant's chronic liver disease met the criteria of section 5.05A of the Listing. (Tr. at 23-24, Finding No. 7). Therefore, the ALJ determined that Claimant was disabled from March 5, 2019 through March 4, 2020. (Tr. at 24, Finding No. 8).

Proceeding with the evaluation, the ALJ concluded that Claimant had not developed any new impairments since March 5, 2020, and her current severe impairments were the same as those listed in Finding No. 3. (*Id.*, Finding No. 9). Further, the ALJ found that, beginning on March 5, 2020, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 24-25, Finding No. 10). The ALJ assessed that Claimant had medically improved as of March 5, 2020, and this improvement related to her ability to work because Claimant no longer had an impairment or combination of impairments that satisfied the Listing. (Tr. at 25-26, Finding Nos. 11, 12). The ALJ determined that, beginning on March 5, 2020, Claimant had the same RFC specified in Finding No. 5, and she could perform her past relevant work specified in Finding No. 6. (Tr. at 26, Finding Nos. 13, 14). Thus, the ALJ concluded that Claimant was not disabled prior to March 5, 2019; was disabled from March 5, 2019 through March 4, 2020; and was not disabled on

or after March 5, 2020. (Tr. at 27, Finding Nos. 15, 16).

## IV. Claimant's Challenge to the Commissioner's Decision

Claimant argues that the ALJ erred in finding Claimant capable of performing medium level work. Claimant contends that she is only capable of functioning at a sedentary level. (ECF No. 16 at 3). In response, the Commissioner posits that substantial evidence supports the ALJ's assessment that Claimant could perform a range of medium exertional work, as well as the step four finding that Claimant could perform her past relevant work. (ECF No. 17).

## V. Relevant Evidence

The undersigned reviewed all of the evidence before the Court. The information that is most pertinent to Claimant's challenge is summarized as follows:

### A. Treatment Records

On May 18, 2017, Claimant's endocrinologist, Laura Trask, M.D., noted that Claimant's insulin-dependent diabetes was poorly controlled. (Tr. at 345). In addition, Claimant had a body mass index (BMI) of 33.24. (Tr. at 348). Despite those issues, Claimant denied any symptoms other than fatigue and dysuria from yeast infections, and her physical examination findings were entirely normal except that she had calluses on her big toes. (Tr. at 347-49). Dr. Trask adjusted Claimant's diabetes medication. (Tr. at 349).

On January 4, 2018, Claimant's primary care physician, Leslie Bradbury, M.D., recorded that Claimant's blood glucose remained high, but Claimant had no physical abnormalities on examination. (Tr. at 351, 353). Claimant was reportedly struggling to work eight-hour nursing shifts due to depression, but she continued to work some weekend shifts. (Tr. at 351). On April 9, 2019, Dr. Bradbury documented that Claimant

9

was more active, required less insulin, and was eating only "veggies" during the day until she had dinner. (Tr. at 604). Claimant suffered from pain and muscle spasm in her right shoulder for the past week. (*Id.*). Her ability to flex and abduct that shoulder was mildly limited secondary to pain, and she had tenderness and muscle spasm in that region, but her physical examination findings were otherwise normal. (Tr. at 605).

Claimant told Elizabeth Steward, FNP-C, on July 18, 2018 that she was working as an LPN, but she was changing jobs because it was hard to use insulin during work. (Tr. at 413). Nurse Steward documented normal physical and mental examination findings. (Tr. at 413-14). Dr. Bradbury likewise noted normal physical examination findings on October 1, 2018, and Claimant had "no concerns" at that visit. (Tr. at 416). On January 3, 2019, Claimant told Dr. Bradbury that she "threw her back out" two days earlier, but she "really did not have any concerns," and her physical examination findings were normal. (Tr. at 421-22).

On March 5, 2019, Claimant presented to the emergency room at Rumford Hospital, reporting profound weakness and shortness of breath. (Tr. at 454). She explained that she first noticed dyspnea six months earlier, but it was very pronounced in the past few weeks. (*Id.*). Physicians diagnosed Claimant with anemia, and she was given a blood transfusion after which her hemoglobin returned to baseline. (Tr. at 455). Claimant's esophagogastroduodenoscopy (EGD) showed esophageal varices, but her colonoscopy was normal. (*Id.*). Claimant was discharged two days later in stable condition. (Tr. at 456). Her discharge diagnoses included anemia of unknown etiology, history of hiatal hernia, arthritis, nonalcoholic fatty liver/cirrhosis, type 2 insulin-dependent diabetes, gastroesophageal reflux disease, hyperlipidemia, obesity, psoriasis, anxiety, and esophageal varices. (Tr. at 457).

On March 4, 2020, Claimant advised Benjamin N. Stein, M.D., that she lost weight over the past year by improving her diet. (Tr. at 654). She generally felt well. (*Id.*). Her BMI was lowered to 30.8. (Tr. at 653). William Keyes, O.D., performed a diabetic eye examination of Claimant on June 18, 2020. Claimant stated that she was working with a diabetes counselor and reduced her blood glucose "in half" in the past two weeks. (Tr. at 662). Claimant's mild non-proliferative diabetic retinopathy was improved, and her cataract was stable. (Tr. at 665). Dr. Bradbury recorded on June 19, 2020 that Claimant's diabetes medication was effective, Claimant's recent EGD showed "stable varices and liver," and Claimant's new medication was more helpful for her GERD and nausea symptoms. (Tr. at 667). Dr. Bradbury again documented normal physical examination findings, including no respiratory, cardiovascular, musculoskeletal, or neurologic abnormalities. (Tr. at 667-68). Claimant's BMI was 30.1. (Tr. at 667).

### B. Prior Administrative Findings

On April 10, 2019, state agency physician Geoffrey Knisely, M.D., assessed after reviewing Claimant's record that she could perform medium exertional work with no postural, manipulative, visual, communicative, or environmental limitations. (Tr. at 95). Donald Trumbull, M.D., affirmed Dr. Knisely's RFC assessment on December 10, 2019. (Tr. at 120).

### C. Claimant's Testimony

Claimant testified during her administrative hearing on June 30, 2020 that she is unable to work due to diabetes, liver cirrhosis, and joint arthritis. (Tr. at 62). She conceded that her esophageal varices were no longer bleeding, and she did not require any further hospitalization or emergency treatment. (Tr. at 66-67). Claimant noted that she worked full time as an LPN for several different employers in 2018 after her alleged

onset date; however, she stated that she could not tolerate those jobs because of her diabetes and liver cirrhosis symptoms, so she searched extensively for other jobs. (Tr. at 44-50). Claimant testified that she could prepare her own meals, do laundry, drive, shop in stores, manage money, read, watch television, and socialize by computer. (Tr. at 70).

## VI. Standard of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the pertinent question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is

supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589). As relevant to this case, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (markings and citations omitted).

## VII. Discussion

Claimant asserts that the ALJ should have found that Claimant was only capable of performing sedentary work. (ECF No. 16 at 3). In support, she cites her alleged physical impairments, including liver cirrhosis, type 2 diabetes, arthritis in every joint, chronic fatigue, skin cancer, elevated heart rate, and hypertension. (*Id.*). Although Claimant also mentions her mental impairments of anxiety and depression, she very clearly indicates that her challenge is confined to the ALJ's physical limitation findings. (*Id.*).

SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical

13

functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177

14

(2d Cir. 2013)) (markings omitted).

Here, the ALJ assessed that from September 15, 2017 to March 4, 2019 and March 5, 2020 to September 28, 2020, Claimant had the RFC to perform a range of medium exertional work. (Tr. at 19-22, 26). The ALJ noted that, despite Claimant's elevated liver function results, nodules, and a fatty liver, she stated in October 2018 that she felt well with no concerns. (Tr. at 20). She also attempted to return to full-time work several times after her alleged onset of disability, and her physician consistently documented unremarkable physical examination findings, including normal posture and gait, intact strength, no focal deficits, and no abdominal abnormalities. (*Id.*). The ALJ explained that it was not until Claimant's quarterly office visit in January 2019 that Claimant reported recent exacerbation of fatigue, muscle weakness, and leg cramping, and her symptoms escalated two months later requiring emergency treatment. (*Id.*). The ALJ noted that Claimant was admitted to the hospital on March 5, 2019 complaining of profound weakness and shortness of breath. (Tr. at 23). Her EGD showed bleeding in the fundus, suggestive of portal hypertensive gastropathy, and she received a blood transfusion. (*Id.*).

However, the ALJ discussed that Claimant's clinical records as of March 5, 2020 showed that she was hemodynamically stable; her cirrhosis was well compensated; she generally felt well; and her laboratory findings were mild. (Tr. at 23, 26). The ALJ considered Claimant's obesity in conjunction with her liver disorder and hepatic steatosis. (Tr. at 20). Yet, the ALJ noted that Claimant's BMI trended downward after her alleged onset date, and she reported in 2020 that she intentionally lost weight by improving her diet. (Tr. at 21). Claimant's examinations again showed normal gait, muscle strength and tone, and full range of motion in all joints. (*Id.*). The ALJ further considered the prior administrative findings, concluding that the physicians' assessments that Claimant could

15

perform a range of medium exertional work was persuasive. (Tr. at 21-22).

Based on the above, the ALJ provided a comprehensive, well-supported explanation for her assessment that Claimant could perform a range of medium work. Claimant does not identify any relevant functions or critical conflicting evidence that the ALJ neglected to consider. Rather, Claimant asks the Court to independently determine that she can perform sedentary work. The Court cannot assess Claimant's RFC because that function is reserved to the Commissioner. The Court's objective on judicial review is to determine whether the ALJ correctly applied the law and whether more than a scintilla of evidence supports the ALJ's decision. That standard is satisfied in this case.

As the ALJ discussed, Claimant's examination findings were overwhelmingly normal. (Tr. at 353, 414, 416, 667-68). Although she was hospitalized for two days in March 2019 for anemia, she did not require any other emergency or inpatient treatment, and her varices were stable in June 2020. (Tr. at 66-67, 667). After her alleged onset of disability, Claimant lost weight and lowered her BMI by improving her diet. (Tr. at 653-54, 667). In addition, she was more active in April 2018, did not have any medical concerns in October 2018, "did not really" have any concerns in January 2019, and generally felt well in March 2020. (Tr. at 416, 421, 604, 654). Claimant remained able to prepare her own meals, do laundry, drive, shop in stores, manage money, read, watch television, and socialize by computer. (Tr. at 70). Furthermore, the state agency physicians concluded that Claimant could perform medium exertional work. (Tr. at 95, 120). Therefore, there was ample support for the ALJ's assessment of Claimant's functional abilities, and the undersigned **FINDS** that the ALJ's RFC finding is supported by substantial evidence.

## VIII. Recommendations for Disposition

For the foregoing reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 16); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 17); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**:  February 1, 2022

Cheryl A. Eifert
United States Magistrate Judge